Post, Respondent, vs. Campbell, Appellant.

*April 12 — April 30, 1901.*

*Equity: Title to land: Pleadings: Amendment: Demurrer* ore tenus: *Remedy at law: Misconduct barring relief: Life estate coupled with power: Inconsistent limitation.*

1. In an action to remove a cloud on the title to real estate, the complaint alleged that defendant claimed the land under a deed from plaintiff's ancestor, which was invalid because never delivered, and that he had wrongfully obtained possession thereof. On the trial, the court permitted the complaint to be amended so as to allege that the plaintiff's father conveyed the land to her mother under an agreement that the mother was to have only a life estate therein, and that the property was to pass to the plaintiff on her death; that the defendant unduly influenced the mother to execute a deed to him, which was never delivered, but was wrongfully obtained by defendant; and that defendant was in possession under said deed, claiming title to the land. *Held*, not a substantial change in the plaintiff's claim within the meaning of sec. 2830, Stats. 1898, authorizing such amendments.

2. The substantial change in the "claim," as the term is used in said statute, only stops short of changing one cause of action for another, as the substitution of a cause of action in equity for one at law, or one sounding in tort for one on contract.

3. In such case an objection to any evidence under the amended complaint, because it failed to state facts constituting a cause of action in equity, was properly overruled, although the complaint showed that plaintiff was out of possession, it being impossible for her to recover without proving, *aliunde* the record, the invalidity of defendant's deed.

4. In a suit in equity to remove a cloud from the title to the plaintiff's lands, a demurrer *ore tenus*, that the complaint fails to state facts constituting a cause of action in equity, is not sufficient to raise the objection that plaintiff has an adequate remedy at law. Such objection is waived by the failure to enter formal demurrer to the complaint on that specific ground.

5. The doctrine that he who comes into equity must come with clean hands applies where the plaintiff has been guilty of some conduct contrary to good conscience in respect to the subject of the litigation or some matter connected therewith and affected thereby; thus

Post vs. Campbell.

where a husband conveys property to his wife under an oral agreement that the wife is to have only a life estate, and that the remainder is to go to his daughter, and the wife after his death remarries, the fact that the daughter fails to render aid to her mother when sick is not such inequitable conduct on her part as will prevent the daughter from maintaining a suit in equity to establish her right to the land as against the second husband, to whom the wife had attempted to convey the fee.

6. An agreement between a husband and wife whereby he conveys land to her absolutely on a consideration that she is to have a life estate, with power to consume so much of the *corpus* of the property as should be necessary for her support, and that the remainder is to go to a daughter, is not within or affected by the rule that, where there is an absolute grant coupled with a right inconsistent therewith, such right, to the extent of such inconsistency, must fail. The right of the daughter to take what was left is in no way inconsistent with the primary right vested in the wife.

APPEAL from a judgment of the circuit court for Walworth county: FRANK M. FISH, Circuit Judge. *Affirmed.*

The complaint in the first instance was in form to remove a cloud upon title to real estate. It stated in substance that plaintiff was the owner in fee simple of the land described in the complaint; that defendant claimed to own the same under a deed from Rebecca Campbell, good upon its face, but that it was never delivered to the grantee. There was the usual prayer appropriate to such an action. The answer denied the material allegations of the complaint and alleged actual ownership and possession under the disputed deed. By leave of court and against objection by defendant's counsel the complaint was amended by alleging, in substance, that March 16, 1881, Thomas Fryer's family consisted of himself, Rebecca Fryer, his wife, and plaintiff, his only child, then fifteen years of age; that he was the owner of the real estate in question; that he was in poor health, and, fully realizing the uncertainty of his life, he formed the purpose to so dispose of said real estate that his wife

Post vs. Campbell.

should have it for her life with power to use so much of the value thereof as should be necessary for her comfortable maintenance and support, and that the residue, if any, should go to plaintiff; that his wife was fully informed of such purpose and with that in mind proposed that a conveyance of an absolute title to the property should be made to her, promising her husband that if he would not make a will to effect his purpose, but would so convey the property, she would give effect to his wishes by using only so much thereof as should be necessary for her support, leaving the remainder to plaintiff; that, relying on such promise, Mr. Fryer conveyed the property to his wife, intending thereby that the grantee should enjoy it for life with the right to sell the same and use the proceeds so far as necessary for her support, and that the balance, if any remained at the termination of Mrs. Fryer's life, should go to plaintiff; that subsequently Mr. Fryer died and about one year thereafter his widow became the wife of defendant; that June 21, 1895, thereafter, she died; that December 28, 1894, defendant induced his wife, by undue influence, to deed said real estate to him, but that the deed was never actually delivered so as to take effect; that he obtained possession thereof after the death of his wife and recorded it, and thereafter set up a claim to the property thereunder.

Except as hereafter stated, the court found the material allegations of the complaint to be true. There was no finding as to the nondelivery of the deed or its having been obtained by defendant by undue influence. The conclusions of law were to the effect that defendant had no right, title, or interest in the premises in controversy; that plaintiff was the owner in fee thereof and entitled to possession of the same, and that her title should be quieted and perfected as against defendant and all persons claiming under him. Judgment was rendered accordingly.

For the appellant there was a brief by *E. H. Sprague*, at-

torney, and *Sanborn, Luse, Powell & Ellis*, of counsel, and
oral argument by *Mr. A. L. Sanborn* and *Mr. Sprague.*

For the respondent there was a brief by *J. F. Lyon* and
*D. B. Barnes*, and oral argument by *J. B. Simmons.*

MARSHALL, J. The following questions are presented:
Did the court err in allowing the amendment? Was it
error to overrule an objection to any evidence under the
amended complaint? Did the evidence disclose equities in
favor of appellant, or wrongdoing by respondent militating
against her right to the relief granted? Was the limita-
tion of the right of respondent's mother to the property
void?

In considering the first question we shall assume, without
deciding, that the amended complaint did not change the
class to which the action belonged; that is, that the orig-
inal complaint stated a cause of action in equity to estab-
lish plaintiff's right to the property in controversy, and that
the amended complaint stated such a cause for the same
purpose, though that the former was to remove a cloud upon
plaintiff's alleged right and the latter to establish such right
and to charge appellant as trustee of the title for the right-
ful owner so far as it had become vested in him. The real
subject of the action, the title to the land, and the remedy
were the same under the amended as under the original
complaint, though the material facts were changed, and the
character of the evidence required to render the remedy re-
sorted to effective was also changed. Counsel for appellant
make no claim, as we understand it, that there was abuse
of discretion in permitting the amendment if power existed
in that regard; but they insist that such power did not ex-
ist; that the statute limiting the right of amendment of
pleadings in cases where the exercise of it will not change
substantially the claim or defense, means will not change
the facts constituting the cause of action or defense thereto

so as to require substantially different proof.   To that many cases decided by this court are cited.   An examination of them discloses that they do not deal with the question of power, but with the proper exercise thereof.

Sec. 2830, Stats. 1898, provides that the court may, upon the trial or at any time in furtherance of justice and upon such terms as may be just, permit a complaint to be amended in any respect that does not change substantially the plaintiff's claim.   That has had judicial construction many times to the effect that the limit of the power of amendment is only exceeded by a departure from the subject of the action.   A substantial change of the "claim," as the term is used in the statute, need only stop short of the substitution of one cause of action for another, as the substitution of a cause of action in equity for one at law or one sounding in tort for one on contract.   *Carmichael v. Argard,* 52 Wis. 607; *Lawe v. Hyde,* 39 Wis. 345; *Lane v. Cameron,* 38 Wis. 603; *Kewaunee Co. v. Decker,* 34 Wis. 378; *Fischer v. Laack,* 76 Wis. 313.   The following language used by Mr. Justice Lyon in the last case cited, clearly indicates the proper construction of the statute as it has been uniformly declared:

" Were this an action in equity, we should grant leave to the circuit court, on a proper showing, to permit the complaint to be amended by inserting the proper averments to entitle the plaintiff to a reformation of the deed.   But it is an action at law, and an amendment which would change it into one in equity is not admissible."

So the only limitation upon the power of amendment within the general scope of the subject of the action, broadly considered, is that it must be in furtherance of justice, upon reasonable grounds, in the sense that such must be the purpose of the exercise of the power.   Within those limits the discretionary power of trial courts to grant amendments to pleadings is supreme.   Outside thereof there is no power to permit amendments at all, because then judicial action would

either be outside the scope of the statute or would be an abuse of power in administering the statute. *Illinois S. Co. v. Budzisz*, 106 Wis. 499. What has been said sufficiently answers the contention that the power of amendment was exceeded in this case; and, as before indicated, no complaint is made of an improper administration of power. Nothing further need be said on this branch of the case.

The decision of the court overruling the objection to any evidence under the complaint because it failed to state facts constituting a cause of action in equity was correct for two reasons: First, the objection was grounded on the idea that, because the complaint alleged title to the realty in plaintiff, and possession thereof in defendant under a void deed, on its face, however, purporting to convey a good title, the plaintiff's remedy was at law. It was impossible for plaintiff to recover without proving *aliunde* the record the invalidity of defendant's deed. This court has several times decided that in such circumstances a plaintiff may vindicate his right to realty, though out of possession thereof, by an action in equity. *Spiess v. Neuberg*, 71 Wis. 279; *Prickett v. Muck*, 74 Wis. 199; *Burrows v. Rutledge*, 76 Wis. 22; *Swihart v. Harless*, 93 Wis. 211; *Kruczinski v. Neuendorf*, 99 Wis. 264; *Gibson v. Gibson*, 102 Wis. 501. In *Burrows v. Rutledge* it was contended by counsel for defendant that, notwithstanding allegations in the complaint that the land was vacant and unoccupied, as a whole, the pleading indicated clearly that the property was in the actual occupation of the defendant under an instrument good on its face and which was effective to vest title in him, if not void as plaintiff claimed, who alleged title under a later conveyance from defendant's grantor; and that, as plaintiff sought to recover on the ground that the first patent was void, his sole remedy was by ejectment. This court, for the purposes of the appeal, assuming the correctness of that construction of the pleading, said that "in cases of fraud, equity and law often

exercise concurrent jurisdiction." 'Where fraud is the foundation of the action and the relief demanded is a cancellation of the instrument under which defendant claims, it would seem that a resort to a suit in equity is proper.' Neither of the two previous cases here cited was referred to, although they covered the subject. Such subject was again treated in *Swihart v. Harless*, and later in *Gibson v. Gibson*, where Mr. Justice Winslow said:

"Where the defendant has the apparent legal title of record, and the facts which make that title inequitable or fraudulent as to the plaintiff are not of record, an equitable action is the proper action in which to obtain an adjudication of the plaintiff's rights."

The second reason why we cannot sustain the claim that the court improperly overruled the objection to any evidence under the complaint, because of an insufficient statement of facts to constitute a cause of action in equity, is that such objection was waived by the failure to enter a formal demurrer to the complaint on that specific ground. A demurrer *ore tenus*, as an objection to evidence is called, was not sufficient to raise the question. See *Hoff v. Olson*, 101 Wis. 118, where a large number of cases on the subject are collated.

The principle in equity jurisdiction, often controlling, that a plaintiff cannot use the arm of equity for the redress of his wrong unless he comes into that jurisdiction with clean hands in that he, himself, is not also guilty of inequitable conduct, is invoked upon the following state of facts: When appellant and respondent's mother were married the premises in controversy were incumbered by a mortgage of $400, which was afterwards increased to $850 prior to the mother's death, the proceeds of the increase being used for the preservation of the farm and the support of appellant and his wife. They lived on the property some thirteen years, during which time they enjoyed the use thereof, and appel-

lant expended in their support and in preserving and improving the farm, not only the income from the same, but a pension which he received of from $8 to 12 per month, and property which he possessed to the amount of several hundred dollars. His wife was sick for some two years before she died, so as to require personal attention, which was rendered mainly by him. Respondent for several years prior to her mother's death, by reason of the belief that she had not been well treated by appellant, which belief was not wholly without foundation, did not give any aid to appellant in the care of her mother. The property was finally conveyed to appellant by his wife shortly before her death as a recognition of his kindness as her husband, a note of $200 being executed at the same time and set aside to be delivered to respondent after her mother's death. We are unable to see anything in that but the mere performance of a husband's duty by appellant, and perhaps a violation of duty on the part of respondent, from which no equity arose in favor of appellant. He did not demand pay for services rendered his wife or receive the comveyance of the property as pay for such services. It was a gift, pure and simple, suggested by the relationship existing between the parties. True, the daughter owed the moral obligation to aid her mother when necessary, but the primary duty to care for the latter rested with her husband and he discharged it. That gave him no right to claim compensation therefor from his wife. Neither did it furnish a legitimate basis for her to bestow the property in question as a gift upon him. It raised no equity against respondent enabling appellant to claim that which was absolutely hers by her father's scheme for disposing of his property. Nothing could have been more foreign to that scheme than that the mother should remarry, thereby raising up the legal and moral obligation of a second husband to furnish her support, and that the satisfaction of such obligation should furnish a jus-

Post vs. Campbell.

tification for bestowing upon a stranger that which he intended for his daughter. The mother was to have the use of the property so far as necessary to her support during life. That was all. So far as the new relation she contracted provided for her necessities, the property was not needed. Regardless of any breach of respondent's duty, appellant acquired no equitable or legal interest against her because of his performance of his own duty.

In order that a party may successfully invoke the doctrine that he who seeks equity must do equity, or the cognate doctrine that he who comes into equity must come with clean hands, he must show possession by himself or some conflicting equity worthy of cognizance in a court of equity. The former doctrine applies only where each of the adversaries have equitable rights in the subject matter of the action or matter so connected therewith as to be affected by the litigation, without assuming any conduct on the part of one in violation of the principles of equity. The latter doctrine applies where the plaintiff has been guilty of some conduct contrary to good conscience in respect to the subject matter of the litigation or some matters connected therewith and affected by the litigation. In that situation the doors of equity may be closed entirely to him, or if opened at all relief may be granted only on such terms as to purge the transaction of inequitable conduct.

Applying what has been said, it will be readily seen that appellant has no equity in the subject of this litigation or connected therewith. Neither has the respondent wronged him in respect to such subject matter or in any way. If she wronged her mother, as claimed, it had no connection whatever with the subject of this litigation so as to create for appellant an equitable claim against respondent for which he has a right to retain her property.

The doctrine that when a person conveys property to another absolutely and without restriction and then ingrafts

Post vs. Campbell.

upon the grant an inconsistent limitation thereof such limitation is void, has no application to the facts of this case. By reference to the scheme which Mr. Fryer settled upon for the disposition of his property prior to making the conveyance to his wife, and which was displaced by such conveyance upon the wife's agreeing to carry it out, in order to determine the nature of the trust upon which the property was taken by her and which continued attached thereto in the hands of appellant, it is clear that it contemplated a mere life estate in the wife with power to consume so much of the *corpus* of the property as should be necessary for her support, and that the balance should go to respondent. No absolute conveyance of the property by Mr. Fryer to his wife was intended, except in form, but only a qualified right thereto,— the right to use it for her support,— not the right to dispose of the property by will or otherwise as she might see fit. She was to have the right to use the property during life in any way she saw fit for the purposes of her support, but for no other purpose. She was not to dispose of it *in specie*, or the proceeds thereof, by will or in any other way except to defray the expenses of her support. The right of respondent to take what was left was in no way inconsistent with the primary right vested in her mother, and therefore it was and is unaffected by the rule that, where there is an absolute grant coupled with a right inconsistent therewith, such right, to the extent of such inconsistency, must fail.

*By the Court.*— The judgment is affirmed.